## LONGEST v. LANGFORD et al.

No. 8670—Opinion Filed April 9, 1918.

Rehearing Denied May 21, 1918.

Second Petition for Rehearing Denied August 27, 1918.

(172 Pac. 927.)

(Syllabus.)

### Trial—Directed Verdict—Evidence.

Where, in an action involving the title to a tract of land, the uncontradicted and undisputed evidence shows the legal and equitable title in the plaintiffs, and the defendant does not introduce any evidence tending to prove a superior title in himself, or any defense to the plaintiffs' action, it is not er-

ror for the trial court to instruct a verdict for the plaintiffs.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by W. C. Langford and another against C. J. Longest. Judgment for plaintiffs upon a directed verdict, motion for new trial overruled, and defendant brings error. Affirmed.

See, also, 67 Okla. 155, 169 Pac. 493.

Cruce & Potter and J. H. Harper, for plaintiff in error.

Guy Green, for defendants in error.

RAINEY, J. The parties to this appeal will be designated as they appeared in the trial court. The plaintiffs, W. C. Langford and Sallie Langford, instituted this action against the defendant, C. J. Longest, to recover the possession of a 140-acre tract of land allotted to W. H. Bourland, a duly enrolled citizen of the Chickasaw Nation, and for rents for the years 1913, 1914, and 1915. The plaintiffs, in their petition and in the evidence offered by them, deraigned their title from the allottee in two separate ways: First, through an executor's deed from W. F. Bourland to J. P. Bourland, executed pursuant to an order of the probate court of Carter county, a deed from J. P. Bourland to A. W. Melton, and a deed from A. W. Melton to Melton & Spivey, the grantors of the plaintiffs; second, through deeds from two of the heirs of W. H. Bourland, deceased, to plaintiffs' grantors, and through deeds from other heirs to plaintiffs. In his answer, the defendant admitted the execution of the deed from J. P. Bourland to A. W. Melton, and alleged that J. P. Bourland had title to the land, and the right to convey the same at the time of its execution, but further alleged that Mr. Melton refused to accept the deed when tendered to him, and refused to and did not pay for the land. The defense made to the title sought to be established through the deeds from the heirs of the decedent to the plaintiffs was that said conveyances were insufficient to convey title, since none of the grantors therein had been in possession of the land for more than one year next preceding the execution of said deeds, and that the same were therefore champertous and void as to the defendant. As a further defense to these deeds the defendant pleaded that the grantors therein did not have any title to the land conveyed at the time of the execution of their deeds, because of the fact that the title to the land had already vested in J. P. Bourland by virtue of the deed executed to

him by W. F. Bourland, as executor. Defendant also alleged title in himself, based upon a deed executed to him by J. P. Bourland on the 26th day of April, 1915. Trial was had to a jury, and at the conclusion of the evidence offered by the plaintiffs and the defendant the court instructed a verdict for the plaintiffs. The defendant's motion for a new trial was overruled, and he has brought the case here for review.

During the course of the trial it was agreed by the plaintiffs and the defendant that the executor's deed from W. F. Bourland to J. P. Bourland conveyed to the latter a good and perfect title, as alleged in the defendant's answer, and for this reason it becomes unnecessary for us to consider plaintiffs' claim of title based upon the deeds subsequently executed by the heirs to them and to their grantors, and the defense made to this claim of title; the effect of the agreement being to eliminate this issue from the case.

The undisputed evidence in the case is that the defendant went into possession of the land as the tenant of plaintiffs' grantors, Melton & Spivey, and that he had been in continuous possession thereof for seven years at the time of the trial. At the inception of the tenancy the plaintiffs' grantors controlled this land, together with other lands, by virtue of a lease from the allottee, which expired December 31, 1913. Before the expiration of this lease, and on, to wit, November 25, 1912, plaintiffs' grantors secured a deed from J. P. Bourland, dated November 25, 1912, and recorded April 9, 1913.

There are several questions argued in the briefs, and it is earnestly insisted by counsel for defendants in error that the defendant, Longest, having remained in possession of the land after the expiration of the lease is estopped to dispute the title of the plaintiffs, who are the grantees of the defendant's landlord. Counsel for defendant contend that, since there was a change in the title of the landlord after the inception of the tenancy, the defendant is not estopped. After having carefully examined and considered the record, we find that it is unnecessary to pass on this question, for the reason, if we assume without deciding that the defendant is in a position to dispute the title of the plaintiffs, we are of the opinion that the plaintiffs have proven a superior and paramount title.

As hereinbefore stated, the plaintiffs and the defendant have agreed that the deed from W. F. Bourland, executor, to J. P. Bourland, conveyed the fee simple title to

the land to the said J. P. Bourland, from whom both plaintiffs and defendant deraign their respective titles. Then when plaintiffs offered in evidence the deed from J. P. Bourland to their grantor, A. W. Melton, the deed from Melton to Melton & Spivey, and the deed from Melton & Spivey to themselves, they made a prima facie case. Now the only defense made to this chain of title was that Mr. Melton did not accept the deed from J. P. Bourland, and refused to pay for the land. In support of this claim counsel for defendant offered the testimony of Mr. A. W. Melton, whom they made their witness for this purpose. Mr. Melton testified positively that he did accept the deed, and that he paid $1,000 on the total purchase price of $2,500. The circumstances surrounding the transaction, which are somewhat unusual, may be briefly stated as follows: The will of W. H. Bourland, deceased, is not in the record, and we are not advised in any way as to the terms thereof, but it appears that Mrs. M. E. Bourland, his widow, and Lula C. Watkins, his daughter, quitclaimed all their right, title, and interest in the land in controversy to W. F. Bourland, executor; that W. F. Bourland, as executor, sold the land under the authority of the probate court of Carter county, to J. P. Bourland, for a consideration of $2,500, and accounted in said court for the proceeds thereof. The deed executed by J. P. Bourland to A. W. Melton was delivered to Mr. Melton by W. F. Bourland, and Mr. Melton took the deed and submitted the abstract of title to his attorneys for examination. The attorneys were doubtful as to whether the executor's deed conveyed all the title to the land, but advised Mr. Melton that it conveyed at least a two-fifths interest; that they were not positive as to some of the other interests being conveyed by this deed, on account of an appearance made for some of the minor heirs in some court proceeding. It was insisted by W. F. Bourland that the deed did convey all the title, and by Mr. Melton, on the advice of his attorneys, that it did not, and for this reason Mr. Melton did not immediately put the deed of record or pay for the land, but later, and in November, 1913, he and, Frank Bourland met in Ft. Worth, Tex., and had a settlement whereby Mr. Melton accepted the executor's deed, together with another deed to the same land from Frank Bourland, paid $1,000, and entered into a contract to pay $1,500, the remainder of the purchase price, when the title was perfected, the $1,000 representing the consideration for the interest of W. F. Bourland and that of J. P.

Bourland, which at least was conceded to have been conveyed by the two deeds.

We would be unable to say from the evidence in the record in this case whether the J. P. Bourland deed to A. W. Melton conveyed more than the interest J. P. Bourland may have inherited in the land, were it not for the fact, as above recited, that the parties have stipulated that he had the fee-simple title to all the interest of all the heirs at the time he executed this deed. We deem it unnecessary to incorporate in this opinion Mr. Melton's testimony in full. It is substantially as we have stated. We do not think the court or jury would have been justified in drawing any conclusion therefrom other than that Mr. Melton accepted the J. P. Bourland deed for whatever interest it did convey, paid the $1,000 thereon, and agreed to pay the balance due on the purchase price when the title was perfected. It seems to have been understood between him and W. F. Bourland that quitclaim deeds from the remaining three heirs would make the title free from doubt, and Mr. W. F. Bourland agreed to secure such deeds from these heirs.

The record does not disclose what arrangements had been made between W. F. Bourland and J. P. Bourland as to the distribution of the money received as purchase price for the land, but the authority of W. F. Bourland to act for J. P. Bourland in the transaction is not questioned.

Under these circumstances we are of the opinion that, although Mr. Melton questioned the extent of the title conveyed by the J. P. Bourland deed, and at first refused to accept the same and to pay any consideration therefor, later, and long prior to the time defendant secured his deed from J. P. Bourland, Mr. Melton did accept the deed for whatever interest it conveyed. It follows that whatever title J. P. Bourland had at the time of the delivery of the deed to Mr. Melton, which is here stipulated to be the fee-simple title, passed to Mr. Melton and subsequently passed to Melton and Spivey and from Melton and Spivey to the plaintiffs. This being true, there was no outstanding title to pass to the defendant by virtue of the deed executed to him by J. P. Bourland on April 29, 1915.

It follows that the trial court was right in directing a verdict for the plaintiffs, and the judgment is therefore affirmed.

All the Justices concur.